RAWLES ET AL., PLAINTIFFS IN ERROR, v. THE PEOPLE EX REL. CORNFORTH, DEFENDANTS IN ERROR.

1. JURISDICTION—COUNTY COURTS.

A county court has jurisdiction of an action on an official bond when the amount claimed does not exceed $2,000, notwithstanding the penalty of the bond is in the sum of $5,000.

2. PRO RATA DISTRIBUTION.

When the statute providing for a pro rata distribution among attach-

ing creditors was in force, the sheriff was under no obligation to pay out the proceeds acquired under their attachments until so ordered by the court.

3. AMENDMENTS.

A complaint may, in furtherance of justice and on such terms as may be proper, be amended by adding the name of a party plaintiff.

4. JUDGMENT—COLLATERAL ATTACK.

A judgment of a court of general jurisdiction cannot be attacked in a collateral proceeding.

5. PRACTICE.

Where the judge of the court was *ex officio* clerk, there was no occasion for an order of court to the clerk to make an assessment of the several amounts each attaching creditor was entitled to out of the property attached. The assessment having been made by the judge in his capacity as clerk it was sufficient.

. 6. SAME.

One who has been made a party to an action and appeared without objection will not be heard, on error, to object, for the first time, that he was not a proper party.

*Error to the District Court of Ouray County.*

Messrs. STOREY & STEVENS, for plaintiffs in error.

Mr. R. D. THOMPSON, for defendants in error.

RICHMOND, P. J., delivered the opinion of the court.

In January, 1885, Birks Cornforth instituted his action in the county court of Ouray county upon the bond of Charles H. Rawles, then sheriff of that county. The bond is in the statutory form and is set out in the complaint.

It is alleged that on the 22d day of December, 1884, Cornforth obtained judgments against Stephen Pollock and others, one for the sum of $915, the other for the sum of $1,658; that executions were issued upon said judgments and placed in the hands of Rawles for collection; that at the same term of the court divers other executions were issued upon certain other judgments obtained by other creditors against the same parties; that Rawles collected out of the property of Pollock et al. for the use of all the attaching

and judgment creditors the sum of $1,363.15; that in December he returned the execution into court; and thereafter and in the month of January, the clerk of the court by direction of the court estimated and computed the amounts due to each attaching and judgment creditor out of the sum so realized; that the amount due Cornforth as his *pro rata* share was $575.50; that Rawles refused and neglected to pay over this amount, although frequently requested to do so. Demand for judgment in the sum of $575.50 with interest and costs.

Answer and cross-complaint filed by defendants, Rawles, King and Nutter. By the answer the judgments rendered in favor of Cornforth are attacked as being fraudulent, null and void. The answer denies that any sum of money is due him under the *pro rata* distribution; admits that the clerk made the *pro rata* distribution but denies that it was upon an order of the court, and alleges that they had no notice of any application for such an order. The grounds on which the judgments are attacked are extensively set out in the second defense and cross-complaint, but we deem it unnecessary to here set them forth. No reply was filed to the second defense and cross-complaint. The record shows that certain creditors appeared by leave of the court and filed a petition of intervention, and set up substantially the same facts in their petition as are alleged in the second defense and cross-complaint of the defendants. Judgment was entered in favor of plaintiffs and the petition of intervention dismissed. An appeal was taken to the district court of Ouray county.

Thereafter in the district court a motion was filed to dismiss the action on the ground that the county court had no jurisdiction and that the plaintiff had no legal capacity to sue in the action. The motion was sustained as to the second cause and plaintiff was permitted to amend the complaint by interlining the words " The People of the State of Colorado ex rel.," before the name " Birks Cornforth." The cause was referred to a referee to take testimony, the referee filed his report recommending judgment for the plaintiff.

Motion to set aside the findings of the referee and the conclusion of law was then interposed and overruled, and judgment entered for the sum of $823.

It appears that Charles H. Rawles, during the progress of this cause, died, and his wife, Harriet A. Rawles, as executrix, was substituted as one of the defendants.

The principal contentions of plaintiffs in error are that the action being upon a bond, the penalty of which was $5,000, the county court had no jurisdiction, and that the district court therefore could not acquire jurisdiction on appeal; that the court erred in permitting plaintiffs to amend the complaint by inserting the words " The People of the State of Colorado ex rel.;" and that the court erred in ordering the substitution of Harriet A. Rawles, executrix, as defendant, in place of Charles H. Rawles, deceased, and in entering judgment against the executrix and the surviving defendants.

As to the proposition that the action being upon a bond, the penalty of which was $5,000, the county court had no jurisdiction, we are satisfied that the contention is without merit.    The amount of damages claimed is for a sum which is clearly within the jurisdiction of the county court.

The rule seems to be that the criterion of the jurisdiction is not the nominal amount of the penalty, or the judgment rendered for it, but the damages prayed for and the actual judgment for which execution will be issued.    *Stone v. Murphy*, 2 Iowa, 35 ; Murfree on Official Bonds, par. 479, 480 ; *State v. Luckey et al.*, 51 Miss. 528; *Bloomer v. Laine*, 10 Wend. 525.

The amount of damages prayed for in this case and for which judgment was rendered brings it within the rule above laid down, and the fact of the suit being brought in the name of The People upon the relation of the party who is alleged to have been injured by the wrongful acts of the sheriff, does not prevent the application of the rule.

It is insisted that the complaint shows that the judgments were rendered at the September term of the court, and that

the executions were returned at the November term; that the order of distribution under the statute was made at the subsequent January term; and inasmuch as the complaint does not show that the money was still in the hands of the sheriff at the time of the prorating and order of distribution, the plaintiff was not entitled to judgment. In other words it is urged that, to be of any force and effect, the prorating and order of distribution must be made at the term of the court at which the judgments were entered or at which the executions were returned.

Under the provisions of the statute in existence at that time, five terms of the county court annually were provided for, and it occurs to us that this of itself argues strongly against the contention of the defendants. Besides, the executions were not returnable until ninety days from date, and this would render it utterly impossible for the court to observe the rule contended for by counsel. A writ issued at the September term, not returnable for ninety days, could not receive the consideration of the court until the January term, unless such execution was returned by the sheriff by consent of all the parties. We are clearly of the opinion that the statute contemplated that attaching and judgment creditors at the same term of court should have a *pro rata* distribution of the property attached or levied upon by virtue of writs issued at that term, and that it made it the duty of the sheriff to retain within his control the fund of the debtor until the action of the court was had with reference to the distribution of the fund so held by him among the creditors in whose interests the writs had issued. Any other rule would permit the sheriff to satisfy executions first placed in his hands, although other executions may have issued from the same court upon judgments obtained at the same term. The sheriff was under no obligation, while this statute providing for *pro rata* distributions was in force, nor could he have been compelled to pay out any portion of the proceeds acquired by virtue of such writs until so directed by the

court. He was absolutely safe in awaiting such action and could have protected himself against any liability.

In *Claflin et al. v. Doggett et al.*, 3 Colo. 413, it was held that, where two attaching creditors are, under the statute, entitled to share *pro rata*, the fact that the property attached is sold under execution issued in one case only, does not affect the right of the creditor not ordering the execution. The effect of the sale is merely to transfer the attachment lien from the property to the fund. See *Daniels et al. v. Lewis et al.*, 7 Colo. 430.

It is next insisted that the court erred in allowing plaintiff to amend the complaint by substituting the words, " The People of the State of Colorado for the use of Birks Cornforth " in place of " Birks Cornforth." By the code it is provided that the court may, on motion, in furtherance of justice, and on such terms as may be proper, amend any pleading or proceeding by adding or striking out the name of any party; or by correcting a mistake in the name of a party; or a mistake in any other respect. * * * Section 75, p. 116, Session Laws, 1887. We deem this provision of the code ample warrant for the court to allow the amendment.

As to the question of fraud, the validity of the judgment, or irregularities in rendering the same, we have to say that they are not susceptible of being attacked in a collateral proceeding of this kind.

In the case of *Hughes v. Cummings*, 7 Colo. 203, the supreme court have most emphatically declared that a judgment of a court of general jurisdiction cannot be attacked except in a direct proceeding. And, by reference to this case in the same volume, page 138, it will be seen that the judgment there sought to be attacked was one rendered in the county court.

It is further insisted that there was no order of the court directing the clerk to make an estimate of the several amounts due the attaching or judgment creditors, and that no notice was given that such an assessment was to be made.

The statute provides that * * * the court shall direct the clerk to make an assessment of the several amounts each attaching or judgment creditor will be entitled to out of the property of the defendant attached. * * *

In this connection we must keep in mind the fact that these judgments were rendered in the county court, and that by virtue of the statute the judge of the county court is *ex officio* clerk thereof, and that he made the assessment of the several amounts due, and determined the sum payable to Cornforth out of the amount of money in the hands of the sheriff.

We think this objection is answered by the conclusion of the supreme court in the case of *Loveland v. Sears*, 1 Colo. 434, wherein an objection was made that the probate judge did not refer a note to the clerk to make assessment of damages as provided by the statute. The court said: " If it were necessary to refer it to the clerk, in this case, it would be handing the note by Jacob Downing, judge, to Jacob Downing, clerk, a ceremony not calculated to especially advance the spirit of justice." So also it can be said here that the judge, in making an order directing the clerk to make an estimate, would be simply directing himself to do the identical thing that the statute determined should be done by the clerk and the court. As judge he was fully aware of the existence of the judgments, and of their validity, then appearing upon the records of his court, and proceeded as clerk to make the estimate as provided by the statute. Besides, in opposition to this contention, we can say that the spirit and letter of the statute was fulfilled in this, that the court as well as the clerk acted officially in determining the amount due to each attaching and judgment creditor.

It is next insisted that Harriet A. Rawles was not a proper party to the proceedings as the executrix of Charles H. Rawles. It is evident from the record that the death of Rawles was suggested to the court. She appeared at various stages of the proceedings without objection to her being made a party, and even if no summons had been issued or no notice served upon her, the appearance made by her attorneys with-

out objection, or without limitation, precludes them from raising the question for the first time in this court.

This concludes all the points we think it necessary for us to determine. We have searched in vain for an error that would warrant a reversal of the judgment.

The judgment must be affirmed.

*Affirmed.*